UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| PORT INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21CV33 HEA |
| | ) | |
| JOHN MAX SHIMP, et al., | ) | |
| | ) | |
| Defendants, | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Kevin Shimp's Motion to
Dismiss Plaintiff's First Amended Petition or, in the Alternative, to Make
Plaintiff's First Amended Petition More Definite and Certain, [Doc. No. 20], and
Defendant John Max Shimp's  Motion to Dismiss, [Doc. No. 22].  Plaintiff
opposes both motions.  For the reasons set forth below, the Motions will be denied.

**Facts and Background**

Plaintiff filed this action in the Circuit Court of Marion County, Missouri.
Defendant A&E Construction Supply removed the matter based on the Court's
diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  Subsequently, Plaintiff
filed a "First Amended Verified Petition for Injunctive and Other Relief."
Plaintiff's Amended Petition alleges:

Plaintiff manufactures and sells trenchers arid plows for agricultural and

industrial purposes. Plaintiff's business exists and remains profitable as a result
of its collection and retention of confidential and proprietary information that is
not generally available to competitors. As a result, competitors of Port
Industries are at a disadvantage in competing successfully against Port
Industries because they lack the pricing, strategic and customer information
that has allowed Port Industries to develop and retain significant business.

Plaintiff was solely owned by Kevin Shimp and Gerald Korb ("Korb")
equally.  Pursuant to an Employment Contract dated March 5, 1999, between
Port Industries and Kevin, it was agreed as follows:

> (a)  All inventions, patent, copyrights, developments and ideas and
> concepts developed by the employee during the course of his
> employment under this Agreement shall be the exclusive property of
> the Corporation."

> (b)  The Employee shall have no right, either during or after
> employment under this Agreement, to use, sell, copy, transfer, or
> otherwise make use of, either for himself or for any persons other
> than the Corporation, any of the confidential business information
> and trade secrets of the Corporation."

Pursuant to a Shareholders Agreement with the owners of Port Industries,
dated

March 5, 1999,

> 8.  As additional consideration to the Corporation,  any shareholder  whose
> shares of stock are purchased  as outlined above shall not engage in any
> business which  directly or indirectly competes with the existing or any other
> business of the corporation within  a  radius of 200 miles from the corporate
> office for a period of two (2) years after such sale and  purchase."

On April 6, 2020, Korb bought Kevin's stock shares in Port Industries
pursuant to the terms of a Shareholders Agreement dated March 5, 1999.  Korb

also met with Max on April 6, 2020 and agreed for Max to continue his employment with Port Industries.  Max was employed with Plaintiff from January 13, 2014 to July 10, 2020, at which time Max terminated his employment with Port Industries.

During his tenure with Port Industries, Kevin was employed as President of the company. Kevin's duties included management of sales and marketing, design, engineering, and service.

During his tenure with Port Industries, Max was employed as Vice President of Renewable Energy, Production Manager and Renewable Energy Salesman. Max's duties included management and supervision of staff, pricing control, sales and maintaining and promoting client relationships.

On April 6, 2020, Kevin downloaded a list of Port Industries' customers for his own personal use, and further refused to return his company cellular telephone containing product specs, drawings, pricing, billing and vendor and customer lists, and then later returned said telephone with all company information deleted from the device.

On April 29, 2020, Max sent an email to a customer, JF Edwards, soliciting sales of products for a competitor, to the detriment of Port Industries and while still employed for Port Industries.

On May 4, 6, 14, 22, and 27, and June 2, 8, 10, 15, and 30, and July 2,

2020, among other dates, Max worked to solicit and promote sales of A & E products, using Port Industry emails and electronic devices to the detriment of Port Industries and while employed with Plaintiff.

On May 18, 2020, Max shipped a Port Industries product to its' competitor, A & E.

On June 3, 2020, Max announced by email to Port Industries' customers that he and Kevin were working for Diggs & Associates, selling products that are competitive with Port Industries, and then arranged meeting with said customers, while still employed for Port Industries.

On July 5, 2020, Max prepared a quote for a competitor's trencher, using Port Industries' forms.

On numerous other dates and times, while still employed for Port Industries, Max and Kevin solicited business for competitor products, and shared confidential proprietary information and trade secrets of Port Industries, with customers and competitors, including A & E.

At all times during their employment with Port Industries, Max and Kevin owed Port Industries certain duties consistent with their positions, including but not limited to management, sales, client service and representation of Port Industries as officers of the corporation.

At all times during their employment, Max and Kevin owed Port

4

Industries the duty of loyalty; the duty not to compete directly with Port Industries; the duty to keep as confidential all of Port Industries' intellectual property, customer lists, proprietary information, and trade secrets; and the duty to keep and preserve Port Industries' property, including computers and computer files and data.

In July 2020, following Max's employment resignation, Max refused to immediately turn in his company laptop computer, and when it was eventually returned a week later, Max had tampered with and deleted all of the proprietary and trade secret information from the device, including product specs, drawings, pricing, billing and vendor and customer lists belonging to Port Industries.

In July 2020, following Max's employment resignation, Max refused to turn in his company cell phone, and refused to turn over all of the proprietary and trade secret information contained in the phone, including product specs, drawings, pricing, billing and vendor and customer lists belonging to Port Industries.

The Port Industries' Employee Handbook prohibits unauthorized use of computers and/or company equipment and revealing confidential information to persons outside Port Industries.

While employed with Port Industries, Max and Kevin received and

acknowledged receipt of the Port Industries Employee Handbook.

Port Industries' Employee Handbook provides, in pertinent part

**<u>Termination</u>**

> Employees are requested to give a two-week notice in the event they wish to cease employment at Port Industries. If a two-week notice is not given, or if the e111ployee does not leave on good terms, earned vacation time will not be reimbursed to the employee. Any employee whose conduct, actions or performance violates or conflicts with Port Industries' policies may be terminated immediately and without warning. *The following are some examples of grounds for immediate dismissal of an employee:*

> - Willful violation of an established policy or rule
> - Insubordination
> - Fighting or serious breach of acceptable behavior
> - Undue and unauthorized absence from duty during regularly scheduled work hours
> - Excessive absenteeism or lateness
> - Failure to follow call-in procedures when late/absent from work
> - Leaving the work premises without authorization during work hours
> - Deliberate non-performance of work
> - Possession of dangerous weapons on the premises
> - Violation of the Drug/Alcohol Policy
> - Violation of the Harassment Policy
> - Sleeping on the job

- Theft
- Unauthorized use of computers and/or other company equipment
- Revealing confidential information to employees or to persons outside Port Industries.
- Sharing of wage/salary information
- Not following Safety Practices
- Breach of trust or dishonesty
- Conviction of a felony
- Falsification of Company records
- Gross Negligence
- Time card violation
- Poor quality of work
- Lack of productivity

The list is intended to be representative of the types of activities that may result in disciplinary action. It is not exhaustive, and is not intended to be comprehensive and does not change the employment-at-will relationship between the employee arid the company.

Plaintiff believes Max and Kevin terminated their employment with Port Industries so as to be able to take with them confidential information consisting of Port Industries' trade secrets and proprietary information.

From April 2020 to the present, Max and Kevin have retained, distributed, and misappropriated confidential Port Industries' product specs, drawings, pricing, billing and vendor and customer lists with industry competitors and other unauthorized persons, without permission or consent of Port Industries.

Plaintiff believes Max and Kevin are presently using trade secret and

proprietary information of Port Industries', including pricing structures, customer lists, product design and manufacture, and other trade secret information to Port Industries' detriment.

Plaintiff further believes Max and Kevin have affiliated themselves with A & E and have shared Port Industries' trade secrets and proprietary information with A & E, to Port Industries' detriment and damage.

Plaintiff's First Amended Petition seeks injunctive relief against all defendants, (Count I); tortious interference with business relationship against all defendants, (Count II); violation of the Missouri Uniform Trade Secrets Act against Defendants Max and Kevin Shimp, (Count III); tampering with computer data and equipment against Defendants Max and Kevin Shimp, (Count IV); usurpation of corporate opportunities against Defendant Max Shimp, (Count V); breach of fiduciary duties against Defendants Max and Kevin Shimp, (Count VI); breach of duty of loyalty against Defendant Max Shimp, (Count VII); civil conspiracy against all Defendants, (Count VIII); breach of contract against Kevin Shimp, (Count IX).

Defendant Max Shimp moves to dismiss the First Amended Petition for failure to state a claim.  Defendant Kevin Shimp moves to dismiss the

First Amended Petition for failure to state a claim or for a more definite and certain statement of the claims.

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. To overcome a motion to dismiss under Rule 12(b)(6) a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id*. at 555. Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555. In reviewing the pleadings under this standard, the Court must accept Plaintiff's factual allegations as true and draw all inferences in Plaintiff's favor, but the Court is not required to accept the legal conclusions Plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court additionally "is not required to divine the litigant's intent and create claims that are not clearly raised, . . . and it need not conjure up unpled allegations to save a complaint."

*Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citations omitted).

**Discussion**

**Kevin Shimp's Motion**

Defendant Kevin Shimp argues that the Petition must be dismissed because in paragraph 13 of the First Amended Petition a paragraph from the Shareholder Agreement is quoted that purports to set forth a noncompete provision.  He argues that the excerpt is Section 8 of the Shareholder Agreement which clearly contemplates applicability only in the event of acquisition of shares in the corporation by Plaintiff, but Plaintiff did not acquire the ownership, Gerald Korb actually purchased Kevin's shares.  Therefore, he contends the noncompete provision doesn't apply or Plaintiff should make its allegations more definite and certain.

Plaintiff argues each of the agreements attached to the First Amended Petition apply to defendants individually.  Furthermore, the claims set forth in Counts I, II, III, IV, VI, VIII, and IX exist by statute and/or common law, regardless of the applicability of the Shareholder Agreement and the Employee Handbook.

The allegations set forth in the First Amended Petition are stated to comply with the provisions of Rule 8 of the Federal Rules of Civil Procedure which

10

provides that Plaintiff is required to set forth a short and plain statement of the grounds upon which the claims rely to show the pleader is entitled to relief.  The First Amended Petition does this through setting forth what Plaintiff believes is the basis of its claims.  According to Plaintiff, the agreements set forth the duties and obligations of Defendants, as agreed by the parties.  Assuming the truth of the allegations in the First Amended Petition, as the Court must at this stage of the proceedings, the First Amended Petition satisfies Rules 8 and 12(b)(6).  Whether the separate paragraph containing the noncompete provision applies to the purchase by Korb is a question to be determined as this litigation progresses, not on a motion to dismiss.

Likewise, Kevin's complaint that the actions took place after he no longer worked for Plaintiff is without merit.  The First Amended Petition sets out that the actions occurred both before and after Kevin's termination of employment.

As for misappropriated use of Plaintiff's customer lists, the Petition also alleges misappropriation of product specs, drawings, pricing, billing, vender lists and customer lists. The Petition goes beyond merely customer lists.

The Court also agrees with Plaintiff that the Missouri Uniform Trade Secrets Act remains.  Plaintiff has alleged misappropriation of product specs, drawings, pricing, billing, vender lists and customer lists.  No further certainty is needed at

this point; the First Amended Petition survives dismissal under the *Twombly* standard.

**Max Shimp**

Defendant Max Shimp initially takes issue with the Employment Contract between Kevin Shimp and Plaintiff.  As Plaintiff aptly points out, this Contract is not a basis for suit against Max, and therefore it does not apply to him.

The same analysis applies to the Shareholder Agreement.  Since Max was never a shareholder, the allegations regarding the Shareholder Agreement would not apply to Max.

Defendant Max also takes issue with the Employee Handbook.  He claims that Plaintiff's reliance on the Handbook is misplaced.  Plaintiff, however, does not rely on the Handbook as providing a basis for its claims against Max, rather Plaintiff sets out the allegations as a backdrop of the relationship between Plaintiff and Defendant Max. In other words, the handbook, while not giving rise to a separate cause of action, sets out facts of the employment circumstances leading up to the alleged claims.  Plaintiff is required to set forth sufficient facts to apprise defendant of the claims being brought against him.  In detailing the contents of the Employee Handbook, Plaintiff is essentially alleging that Defendant knew what was expected of employees and how this particular employee failed expectations, which Plaintiff claims violated certain statutory and/or common law.

Defendant takes issue with what he perceives as a claim that he is not allowed to compete with Plaintiff absent a restrictive covenant.  With respect to this defendant, however, Plaintiff claims he competed with Plaintiff *while still employed* by Plaintiff, an entirely different scenario.

Defendant also takes issue with Plaintiff's allegations regarding the misappropriation of "confidential proprietary information and trade secrets," claiming these are "bare-bones" assertions.  In keeping with the standards required under *Twombly*, Plaintiff's First Amended Petition contains sufficient detail for Defendant to formulate an answer to the claims.  Plaintiff alleges Defendant misappropriated product specs, drawings, pricing, billing, vender lists and customer lists.  This sufficiently informs Defendant of the nature of the claim and the exact details can be obtained through discovery.

Defendant's argument that derivative claims must be dismissed fails in light of the foregoing.

Plaintiff has sufficiently set forth claims against Defendant John Max Shimp.  The motion to dismiss will be denied.

## Conclusion

Plaintiff's First Amended Petition sufficiently sets forth the claims enumerated herein.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kevin Shimp's Motion to Dismiss Plaintiff's First Amended Petition or, in the Alternative, to Make Plaintiff's First Amended Petition More Definite and Certain, [Doc. No. 20], is denied.

**IT IS FURTHER ORDERED** that Defendant John Max Shimp's  Motion to Dismiss, [Doc. No. 22], is denied.

Dated this 15th day of November 2021.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE