**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

PORT INDUSTRIES, INC.,     )
                              )
    Plaintiff,         )
                              )
v.                        )      Case No. 2:21CV33 HEA
                              )
JOHN MAX SHIMP, et al.,     )
                              )
    Defendants.     )

## OPINION, MEMORANDUM AND ORDER

This matter was originally filed in the Circuit Court of Marion County, [1]

Missouri on March 15, 2021 against Defendants A & E Construction Supply, Inc.

(A & E), John Max Shimp, and Kevin Shimp. For the reasons enumerated below,

the Court finds that there is no personal jurisdiction over A & E . A. & E.'s Motion

to Dismiss will be granted.

### Facts and Background[2]

Plaintiff filed this action in the Circuit Court of Marion County, Missouri.

Defendant A&E Construction Supply removed the matter based on the Court's

diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  Subsequently, Plaintiff

---

[1] John Max Shimp and Kevin Shimp's Motions to Dismiss were denied on November 15, 2021.

[2]  The recitation of facts is taken from Plaintiff's Complaint for the purposes of this motion only. It in no way relieves the parties of the necessary proof thereof in later proceedings.

filed a "First Amended Verified Petition for Injunctive and Other Relief."

Plaintiff's Amended Petition alleges:

Plaintiff avers the Court has jurisdiction over Defendant A & E because of

the commission of tortious acts in the State of Missouri and transacting business in

Missouri.

Plaintiff manufactures and sells trenchers arid plows for agricultural and

industrial purposes. Plaintiff's business exists and remains profitable as a result

of its collection and retention of confidential and proprietary information that is

not generally available to competitors. As a result, competitors of Port

Industries are at a disadvantage in competing successfully against Port

Industries because they lack the pricing, strategic and customer information

that has allowed Port Industries to develop and retain significant business.

Plaintiff was solely owned by Kevin Shimp and Gerald Korb ("Korb")

equally.  Pursuant to an Employment Contract dated March 5, 1999, between

Port Industries and Kevin, it was agreed as follows:

(a) All inventions, patent, copyrights, developments and ideas and
concepts developed by the employee during the course of his
employment under this Agreement shall be the exclusive property of
the Corporation."

(b) The Employee shall have no right, either during or after
employment under this Agreement, to use, sell, copy, transfer, or
otherwise make use of, either for himself or for any persons other
than the Corporation, any of the confidential business information
and trade secrets of the Corporation."

2

Pursuant to a Shareholders Agreement with the owners of Port Industries, dated March 5, 1999,

> 8.  As additional consideration to the Corporation,  any shareholder  whose shares of stock are purchased  as outlined above shall not engage in any business which  directly or indirectly competes with the existing or any other business of the corporation within  a  radius of 200 miles from the corporate office for a period of two (2) years after such sale and  purchase."

On April 6, 2020, Korb bought Kevin's stock shares in Port Industries pursuant to the terms of a Shareholders Agreement dated March 5, 1999.  Korb also met with Max on April 6, 2020 and agreed for Max to continue his employment with Port Industries.  Max was employed with Plaintiff from January 13, 2014 to July 10, 2020, at which time Max terminated his employment with Port Industries.

During his tenure with Port Industries, Kevin was employed as President of the company. Kevin's duties included management of sales and marketing, design, engineering, and service.

During his tenure with Port Industries, Max was employed as Vice President of Renewable Energy, Production Manager and Renewable Energy Salesman. Max's duties included management and supervision of staff, pricing control, sales and maintaining and promoting client relationships.

On April 6, 2020, Kevin downloaded a list of Port Industries'

customers for his own personal use, and further refused to return his

company cellular telephone containing product specs, drawings, pricing,

billing and vendor and customer lists, and then later returned said telephone

with all company information deleted from the device.

On April 29, 2020, Max sent an email to a customer, JF Edwards,

soliciting sales of products for a competitor, to the detriment of Port Industries

and while still employed for Port Industries.

On May 4, 6, 14, 22, and 27, and June 2, 8, 10, 15, and 30, and July 2,

2020, among other dates, Max worked to solicit and promote sales of A & E

products, using Port Industry emails and electronic devices to the detriment of

Port Industries and while employed with Plaintiff.

On May 18, 2020, Max shipped a Port Industries product to its

competitor, A & E.

On June 3, 2020, Max announced by email to Port Industries' customers

that he and Kevin were working for Diggs & Associates, selling products that

are competitive with Port Industries, and then arranged meetings with said

customers, while still employed for Port Industries.

On July 5, 2020, Max prepared a quote for a competitor's trencher, using

Port Industries' forms.

On numerous other dates and times, while still employed for Port

4

Industries, Max and Kevin solicited business for competitor products, and shared confidential proprietary information and trade secrets of Port Industries, with customers and competitors, including A & E.

At all times during their employment with Port Industries, Max and Kevin owed Port Industries certain duties consistent with their positions, including but not limited to management, sales, client service and representation of Port Industries as officers of the corporation.

At all times during their employment, Max and Kevin owed Port Industries the duty of loyalty; the duty not to compete directly with Port Industries; the duty to keep as confidential all of Port Industries' intellectual property, customer lists, proprietary information, and trade secrets; and the duty to keep and preserve Port Industries' property, including computers and computer files and data.

In July 2020, following Max's employment resignation, Max refused to immediately turn in his company laptop computer, and when it was eventually returned a week later, Max had tampered with and deleted all of the proprietary and trade secret information from the device, including product specs, drawings, pricing, billing and vendor and customer lists belonging to Port Industries.

In July 2020, following Max's employment resignation, Max refused to

tum in his company cell phone, and refused to tum over all of the proprietary

and trade secret information contained in the phone, including product specs,

drawings, pricing, billing and vendor and customer lists belonging to Port

Industries.

The Port Industries' Employee Handbook prohibits unauthorized use of

computers and/or company equipment and revealing confidential information

to persons outside Port Industries.

While employed with Port Industries, Max and Kevin received and

acknowledged receipt of the Port Industries Employee Handbook.

Port Industries' Employee Handbook provides, in pertinent part

**Termination**

> Employees are requested to give a two-week notice in
> the event they wish to cease employment at Port
> Industries. If a two-week notice is not given, or if the
> e111ployee does not leave on good terms, earned
> vacation time will not be reimbursed to the employee.
> Any employee whose conduct, actions or performance
> violates or conflicts with Port Industries' policies may
> be terminated immediately and without warning. *The*
> *following are some examples of grounds for immediate*
> *dismissal of an employee:*
>
> - Willful violation of an established policy or
>   rule
> - Insubordination
> - Fighting or serious breach of acceptable

6

behavior
- Undue and unauthorized absence from duty during regularly scheduled work hours
- Excessive absenteeism or lateness
- Failure to follow call-in procedures when late/absent from work
- Leaving the work premises without authorization during work hours
- Deliberate non-performance of work
- Possession of dangerous weapons on the premises
- Violation of the Drug/Alcohol Policy
- Violation of the Harassment Policy
- Sleeping on the job
- Theft
- Unauthorized use of computers and/or other company equipment
- Revealing confidential information to employees or to persons outside Port Industries.
- Sharing of wage/salary information
- Not following Safety Practices
- Breach of trust or dishonesty
- Conviction of a felony
- Falsification of Company records
- Gross Negligence
- Time card violation
- Poor quality of work
- Lack of productivity

The list is intended to be representative of the types of activities that may result in disciplinary action. It is not exhaustive, and is not intended to be comprehensive and does not change the employment-at-will relationship between the employee and the company.

Plaintiff believes Max and Kevin terminated their employment with Port

7

Industries so as to be able to take with them confidential information consisting of Port Industries' trade secrets and proprietary information.

From April 2020 to the present, Max and Kevin have retained, distributed, and misappropriated confidential Port Industries' product specs, drawings, pricing, billing and vendor and customer lists with industry competitors and other unauthorized persons, without permission or consent of Port Industries.

Plaintiff believes Max and Kevin are presently using trade secret and proprietary information of Port Industries', including pricing structures, customer lists, product design and manufacture, and other trade secret information to Port Industries' detriment.

Plaintiff further believes Max and Kevin have affiliated themselves with A & E and have shared Port Industries' trade secrets and proprietary information with A & E, to Port Industries' detriment and damage.

Plaintiff's First Amended Petition seeks injunctive relief against all defendants, (Count I); tortious interference with business relationship against all defendants, (Count II); violation of the Missouri Uniform Trade Secrets Act against Defendants Max and Kevin Shimp, (Count III); tampering with computer data and equipment against Defendants Max and Kevin Shimp, (Count IV); usurpation of corporate opportunities against

Defendant Max Shimp, (Count V); breach of fiduciary duties against

Defendants Max and Kevin Shimp, (Count VI); breach of duty of loyalty

against Defendant Max Shimp, (Count VII); civil conspiracy against all

Defendants, (Count VIII); breach of contract against Kevin Shimp, (Count

IX).

## Discussion

**Legal Standard**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff

must plead "sufficient facts to support a reasonable inference that the defendant[ ]

can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF

Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). If the defendant challenges

jurisdiction, the burden is on the plaintiff to present facts supporting jurisdiction.

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th

Cir. 2012). The court views the evidence in the light most favorable to the plaintiff

and resolves factual conflicts in plaintiff's favor in determining whether plaintiff

has made a *prima facie* showing of personal jurisdiction over the challenging

defendant. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir.

2014). The plaintiff's "*prima facie* showing" is tested by the pleadings as well as

by the affidavits and exhibits, if any, submitted in connection with the motion.

9

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004); *see*

*Fastpath, Inc.*, 760 F.3d at 820.

Personal jurisdiction may be either general or specific.  *Bristol-Myers*

*Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773,

1780 (2017).  "Specific jurisdiction refers to jurisdiction over causes of action

arising from or related to a defendant's actions within the forum state, while

general jurisdiction refers to the power of a state to adjudicate any cause of action

involving a particular defendant, regardless of where the cause of action arose."

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593

(8th Cir. 2011).  The Supreme Court has made clear that the "primary concern" in

determining the presence of personal jurisdiction is "the burden on the

defendant."  *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

**General Personal Jurisdiction**

"[O]nly a limited set of affiliations with a forum will render a defendant

amenable to general jurisdiction in that State."  *Bristol-Myers*, 137 S. Ct. at 1780

(quoting *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) (quotation marks

omitted)).  "For an individual, the paradigm forum for the exercise of general

jurisdiction is the individual's domicile; for a corporation, it is an equivalent place,

one in which the corporation is fairly regarded as at home."  *Daimler*, 571 U.S. at

10

137 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quotation marks omitted).  "The paradigm forums in which a corporate defendant is at home ... are the corporation's place of incorporation and its principal place of business ...."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quotation marks and citation omitted).  Only in an "exceptional case" could "a corporate defendant's operations in another forum ... be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* (quotation marks and citation omitted).

Plaintiff claims A & E has committed tortious acts in the State of Missouri and has transacted business in Missouri. It does not claim that A & E is incorporated in Missouri nor that its  principal place of business is in Missouri, making it paradigmatically home in those states.  In order to find that it has general jurisdiction over A & E, therefore, the Court would have to find this to be an "exceptional case," one in which the contacts between A & E and Missouri are "so substantial and of such a nature as to render [A & E] at home in" Missouri.  *BSNF*, 137 S. Ct. at 158.

"A corporation's 'continuous activity of some sort within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' 326 U.S., at 318, 66 S. Ct. 154."  *Goodyear*, 564 U.S. at 927.  "[T]he general jurisdiction inquiry does not

11

focus solely on the magnitude of the defendant's in-state contacts. . . .  Rather, the inquiry calls for an appraisal of a corporation's activities in their entirety; [a] corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF*, 137 S. Ct. at 1559 (quoting *Daimler*, 134 S. Ct., at 762, n. 20 (quotation marks and citations omitted)).  The activities alleged by Plaintiff are insufficient to subject A & E to personal jurisdiction in Missouri for any and all actions brought against it.  Nothing before the Court evinces an exceptional situation wherein A & E is essentially "at-home" in Missouri. A & E is not subject to general, all-purpose jurisdiction in this state.

**Specific Personal Jurisdiction**

Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute *and* permitted by the Due Process Clause of the Fourteenth Amendment.  *Viasystems, Inc.*, 646 F.3d at 593 (emphasis added).  Due process permits the exercise of specific personal jurisdiction over a non-resident defendant when three criteria are satisfied: "First, the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of

jurisdiction must be reasonable under the circumstances." *Bristol-Myers*, 137 S.

Ct. at 1785–86.

Plaintiff claims that specific jurisdiction is proper because of "tortious acts"

in Missouri. Plaintiff claims that specific jurisdiction is proper because its business

has suffered the effects of Defendants' tortious acts. Supreme Court precedent

dictates otherwise: "The proper question is *not where the plaintiff experienced a*

*particular injury or effect* but whether the *defendant's conduct* connects him to the

forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (emphasis

added).  "For a State to exercise jurisdiction consistent with due process, the

defendant's *suit-related conduct* must create a substantial connection with the

forum State." *Id.* at 284 (emphasis added).   Put another way, it is impermissible

under due process to "allow[] a plaintiff's contacts with the defendant and forum to

drive the jurisdictional analysis." *Id.* at 289.

In this case, the First Amended Petition contains no claims that any actions

between Defendants took place in Missouri.  While the First Amended Petition

details some actions of Max and Kevin Shimp in Missouri, there are no actions

alleged to have been taken by A & E in Missouri. All actions involving AA & E

occurred outside of Missouri

In *Bristol-Myers*, the Supreme Court rejected the California Supreme

Court's approach to specific personal jurisdiction which "relaxed" the necessary

13

strength of the "connection between the forum and the specific claims at issue"

where a defendant had extensive forum contacts unrelated to those claims.  137 S.

Ct. at 1781. Actual in-forum conduct by a defendant is necessary to establish

specific personal jurisdiction.  As Judge Limbaugh recently wrote:

> *Bristol-Myers*, therefore, expressly linked specific jurisdiction either
> to a foreign defendant's particular acts within the forum or the
> particular acts of its agent and/or alter-ego subsidiary/distributor. *Id.*
> at 1781-1783. There was no suggestion that mere expectation or
> knowledge of the effects of a distributing relationship sufficed to
> establish personal jurisdiction.

*A.T. Through Travis v. Hahn*, 341 F. Supp. 3d 1031, 1037 (E.D. Mo. 2018).

This Court cannot exercise specific jurisdiction over A & E as due process

requires that a cause of action arise out of or relate to a defendant's conduct in a

forum state; here, any relevant conduct by A & E occurred outside of the forum.

### Conclusion

Based upon the foregoing, the Court is without personal jurisdiction over

Defendant A & E.

**IT IS HEREBY ORDERED** that Defendant A & E's Motion to Dismiss

[Doc. No. 24] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant A & E Construction Supply,

Inc. is **DISMISSED.**

Dated this 17th   day of December 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE